UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                              :

**In re CITIGROUP PENSION PLAN**   :
**ERISA LITIGATION**                 :

                              :    **OPINION AND ORDER**
                              :
                              :    **MASTER FILE:  05 Civ. 5296**
**THIS DOCUMENT RELATES TO:**  :    **(SAS)**
**ALL ACTIONS**                   :
------------------------------------------------------X
**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

        Michael Lonecke, Raymond Duffy, Anne Nelson, Robert S. Fash and

Craig A. Harris, on behalf of themselves and a class of similarly situated

individuals ("plaintiffs"), filed consolidated actions against Citigroup Inc., and its

Plans Administration Committee ("defendants"), alleging that the Citibuilder Cash

Balance Plan ("Plan") violates the Employee Retirement Income Security Act of

1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*  This ruling assumes

familiarity with the Court's previous ruling on the parties' cross-motions for

summary judgment, which describes the ways in which the Plan's design and

execution violate ERISA.[1]   By Opinion and Order, the Court granted summary

---

[1]    *See In re Citigroup Pension Plan ERISA Litig.*, No. 05 Civ. 5296, 2006 WL
3613691 (S.D.N.Y. Dec. 12, 2006) ("*Citigroup I*").

judgment in plaintiffs' favor on Counts I, III, V and VII of their Consolidated

Class Action Amended Complaint ("Complaint"),[2] denied defendants' motion for

summary judgment, and directed defendants to reform the Plan to comply with

ERISA.

In this Opinion, I address plaintiffs' motion for class certification,

filed August 25, 2006. For the reasons stated, class certification is granted.

## II.   BACKGROUND

### A.   Citigroup's Cash Balance Plan[3]

Both parties have agreed to all material facts.[4] The named plaintiffs

are present or former employees of either Smith Barney or Citibank, N.A., both of

which are divisions of Citigroup Inc. ("Citigroup").[5] They all accrued benefits

---

[2]     Count I of the Complaint alleges that the Plan is impermissibly backloaded in violation of ERISA. *See* ERISA § 204(b)(1); 29 U.S.C. § 1054(b)(1). Count III alleges that the Plan unlawfully applies the fractional test for monitoring compliance with statutorily mandated accrual rates. *See id.* Count V alleges that the Plan is age-discriminatory in violation of ERISA. *See* ERISA § 204(b)(1)(H)(i); 29 U.S.C. § 1054(b)(1)(H)(i). Count VII alleges that defendants failed to provide Plan participants proper notice of amendments made to the Citigroup Pension Plan in 2000 and 2002, as required by section 204(h) of ERISA, 29 U.S.C. § 1054(h).

[3]     For a thorough discussion of how cash balance plans work, see Dan M. McGill, et al., *Fundamentals of Private Pensions* 262-64 (8th ed. 2005) ("McGill").

[4]     *See* Joint Stipulations ("Joint Stips.").

[5]     *See id.* ¶¶ 1-6.

2

under the Plan during all or part of the period since January 1, 2000 ("class period").[6] Two named plaintiffs were vested participants at the time their employment terminated.[7]

### 1.    January 1, 2000 Cash Balance Amendment

In a meeting on October 19, 1999, Citigroup's Board of Directors ("the Board") voted to incorporate a "cash balance design" into the Citigroup Pension Plan.[8] At this meeting, the Board did not discuss specific provisions of the newly adopted cash balance amendment ("CBA"), such as how it would calculate benefits. In fact, provisions of the amendment setting forth the Plan's formula in detail were not produced in an executed Citibuilder Retirement Plan document until May 27, 2001.[9]

---

[6]    *See id.* ¶ 7. The cash balance plan at issue here is one of three pension plans presently comprising the Citigroup Pension Plan. *See id.* ¶ 8.

[7]    *See id.* ¶ 7.

[8]    *Id.* ¶ 16. Minutes from the Board meeting state that the Board adopted a cash balance formula "on substantially the terms as previously presented to the Board," which referred to a presentation on employee benefits given to the Board on March 16, 1999, by Paul J. Collins, Vice Chairman of Citigroup. Minutes of the 10/19/99 Board meeting ("10/19/99 Minutes"), Ex. 4 to Joint Stips. Collins' presentation included a report on how a cash balance formula could be incorporated into the Citigroup Pension Plan. *Id. Accord* Joint Stips. ¶ 16.

[9]    *See* Joint Stips. ¶ 18; 5/27/01 Action of Senior Human Resources Officer Michael Schlein ("Schlein Action"), Ex. 7 to Joint Stips. The 2000 CBA was also described in a summary plan description dated January 1, 2001, but this document was not made available to employees until June 2001. *See* Joint Stips. ¶ 18.

3

However, after the Board's vote, and prior to the CBA's effective date

of January 1, 2000, plan participants did receive a summary notice of the new

pension formula.[10]  This notice was a letter mailed to all effected employees dated

December 9, 1999, from Tim Peach, Director of Retirement Benefits.[11]  Attached

to the letter was a document entitled – in large boldfaced letters – "The Citigroup

Pension Plan Notice of Significant Reduction in Benefit Accruals for Certain

Employees of Citigroup Inc. and its Subsidiaries."[12]  The document contained an

overview of how the cash balance formula would work, as well as a table listing

the percentages of salaries that would be credited to accounts annually, based on

an employee's age and years of service.[13]  Most importantly, the notice neither

included nor summarized Plan Article 4.1(e), which adopts the "fractional rule" as

the Plan's mechanism for complying with ERISA's minimum benefit accrual

rates, and is the linchpin of plaintiffs' actuarial claims.[14]

---

[10]    *See* 12/9/99 Letter and Attachments from Tim Peach ("December 1999 section 204(h) notice"), Ex. 16 to Joint Stips.

[11]    *See id.*

[12]    *Id.*  At least one named plaintiff, Lonecke, recalls receiving this notice at his residence in late 1999. *See Joint Stips.* ¶ 31.

[13]    *See* December 1999 section 204(h) notice.

[14]    *See* ERISA § 204(b)(1); 29 U.S.C. § 1054(b)(1) (requiring pension plans to adopt one of three alternative accrual rules designed to prevent plans from backloading benefits).

## 2.    January 1, 2002 CBA

The 2002 CBA incorporated the same cash balance regime adopted in 2000, but recalibrated the range of benefit credits that would be allotted annually to employees' hypothetical accounts. Specifically, it lowered the floor from 2% to 1.5% of compensation for participants under age twenty-nine in their first five years of credited service. It also lowered the ceiling from 7% to 6% of compensation for participants fifty-five years or older with fifteen or more years of credited service ("2002-Present Benefit Credits").[15] The application of the fractional rule under Article 4.1(e) remained unchanged.

The first and only communication about this amendment to Plan participants which preceded its effective date, January 1, 2002, and which conceivably met statutory notice requirements, was an information package dated December 2001.[16] However, as with the December 1999 section 204(h) notices, there is no mention of the Plan's application of the fractional rule.[17] The named plaintiffs do not recall receiving these packages, nor do they recall being aware in

---

[15]    *See* Joint Stips. ¶¶ 24-25.

[16]    *See id.* ¶¶ 35-36; ERISA § 204(h); 29 U.S.C. § 1054(h).

[17]    *See* Joint Stips. ¶¶ 35-36.

December 2001 that the 2002 CBA "might substantially reduce benefit accruals for themselves or others."[18]

Plaintiffs filed their Complaint on September 21, 2005, alleging numerous ERISA violations.  Their prayer for relief includes injunctive and declaratory relief as well as monetary damages.[19]

## III.   APPLICABLE LAW

### A.   Plan "Participants" Under ERISA

As a preliminary matter, plaintiffs seek certification of a class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, consisting of all individuals who were "participants" in the Plan at any time during the class period, "their beneficiaries and Estates, and those who are subject to the Plan's cash balance formula [] pursuant to ERISA."[20]  Section 3(7) of ERISA defines a benefit plan "participant" as an

> employee or former employee of an employer, or any
> member or former member of an employee organization,
> who is or may become eligible to receive a benefit of
> any type from an employee benefit plan which covers
> employees of such employer or members of such

---

[18]    *Id.* ¶ 37.  Defendants stipulate that had plaintiffs been aware of the implications of the 2002 CBA, they would have initiated legal action earlier than they did.  *See id.*

[19]    *See* Complaint ¶¶ 32-42, "Prayer For Relief" (A)-(F).

[20]    Plaintiffs' Motion for Class Certification ("Pl. Mem.") at 1-2.

> > organization, or whose beneficiaries may be eligible to
> > receive any such benefit . . . .[21]

"Congress intended the statutory scheme [in ERISA], in conjunction with state law, to afford broad protection."[22]  Plaintiffs have standing to sue if they are "within the 'zone of interests'" articulated by the statute.[23]

## B.    Rule 23(a) Class Certification Requirements

Rule 23 of the Federal Rules of Civil Procedure governs class certification.  To be certified, a putative class must first meet all four prerequisites set forth in Rule 23(a).  Plaintiffs bear the burden of demonstrating that the class meets these requirements — commonly referred to as numerosity, commonality, typicality, and adequacy.[24]  The numerosity requirement mandates that the class be "so numerous that joinder of all members is impracticable."[25]  Commonality

---

[21]     29 U.S.C. § 1002(7).

[22]     *Mullins v. Pfizer, Inc.,* 23 F.3d 663, 667-68 (2d Cir. 1994) (concluding it would be unfair to bar plaintiff, who had terminated participation in his pension plan in reliance on misleading statements made by plan administrators, from pursing an ERISA action for fraudulent misrepresentation).

[23]     *Id.* (citation omitted). *See also* ERISA § 502(a)(1)(B); 29 U.S.C. § 1132(a)(1)(B) (providing that a participant or beneficiary of an ERISA plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan").

[24]     *See, e.g., Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 573 (2d Cir. 2000).

[25]     Fed. R. Civ. P. 23(a)(1).

requires a showing that common issues of fact or law affect all class members.[26]

Typicality exists where the named plaintiffs' claims and the absent class members'

claims arise from "the same course of events," and where each class member

makes "similar legal arguments" to prove defendant's liability.[27]  The adequacy

requirement demands that "the representative parties will fairly and adequately

protect the interests of the class."[28]  Finally, although "'Rule 23(a) does not

expressly require that a class be definite in order to be certified[,] a requirement

that there be an identifiable class has been implied by the courts.'"[29]

### C.    Rule 23(b) Class Certification Requirements

In addition to showing that the proposed class satisfies the four

prerequisites of Rule 23(a), plaintiffs must also show that the class is

"maintainable" under Rule 23(b).  A class satisfies this requirement if it in fits into

---

[26]    *See* Fed. R. Civ. P. 23(a)(2); *see also Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992).

[27]    *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001) (quoting *Marison A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)).

[28]    Fed. R. Civ. P. 23(a)(4).

[29]    *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323, 336 (quoting *Zapka v. Coca-Cola Co.*, No. 99 Civ. 8238, 2000 WL 1644539, at *2 (N.D. Ill. Oct. 27, 2000)).  This implied requirement is often referred to as "'ascertainability.'"  *Id.* (quoting *Van West v. Midland Nat'l Life Ins. Co.*, 199 F.R.D. 448, 451 (D.R.I. 2001)).

one of the three alternative categories delineated by Rule 23(b), subdivisions (1), (2), and (3).[30]  A class may be certified under more than one category.[31]

Rule 23(b)(1)(A) permits certification where multiple suits "could create a possibility of incompatible adjudications" or "establish incompatible standards to govern [defendants'] conduct."[32]  Rule 23(b)(1)(B) is more specialized; it covers situations where individual actions "would create a risk of . . . adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests."[33]

Under Rule 23(b)(2), class litigation is appropriate where "the party opposing the class has acted or refused to act on grounds generally applicable to

---

[30]     The named plaintiffs originally moved for class certification pursuant to all three subdivisions of Rule 23(b).  By letter to the Court dated 12/12/06, plaintiffs formally requested to withdraw their motion for certification under Rule 23(b)(3); the Court granted this request without prejudice and with leave to replead should it become necessary to do so.

[31]     *See, e.g., Richards v. FleetBoston Fin. Corp.*, No. 04 Civ. 1638, 2006 WL 2979373 (D. Conn. Oct. 16, 2006) (granting class certification pursuant to Rule 23(b)(1)(A) and Rule 23(b)(2)).

[32]     1966 Advisory Committee Note to Rule 23(b).  *See* Fed. R. Civ. P. 23(b)(1)(A).

[33]     Fed. R. Civ. P. 23(b)(1)(B).

the class, thereby making appropriate final injunctive relief or corresponding

declaratory relief with respect to the class as a whole."[34]  The Advisory Committee

Note suggests that in this context, "[d]eclaratory relief 'corresponds' to injunctive

relief when as a practical matter it affords injunctive relief or serves as a basis for

later injunctive relief."[35]

            Although subdivision (b)(2) was designed with an eye towards

equitable relief, certification of a class seeking both equitable and monetary relief

may be appropriate "in light of the relative importance of the remedies sought,

given all of the facts and circumstances of the case."[36]  The Second Circuit has

instructed that in assessing whether subdivision (b)(2) applies, a district court's

first inquiry is whether "'even in the absence of possible monetary recovery,

reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory

relief sought.'"[37]  The court's next inquiry is whether "'the injunctive or

---

[34]     Fed. R. Civ. P. 23(b)(2).

[35]     1966 Advisory Committee Note to Rule 23(b)(2).

[36]     *Parker v. Time Warner Cable*, 331 F.3d 13, 20 (2d Cir. 2003) (quotation
marks and citation omitted).

[37]     *Id.* (quoting *Robinson*, 267 F.3d at 164).

10

declaratory relief would be both reasonably necessary and appropriate were the

plaintiffs to succeed on the merits.'"[38]

### D.    Standard of Proof

The Second Circuit recently articulated the requisite standard of proof

for class certification in *Miles et al. v. Merrill Lynch et al.* ("*Miles*").[39]   District

courts may now certify classes only after assessing "all the relevant evidence

admitted at the class certification stage," and finding that "each of the Rule 23

requirements has been met."[40]   Furthermore,

> such determinations can be made only if the [court] resolves
> factual disputes relevant to each Rule 23 requirement and finds
> that whatever underlying facts are relevant to a particular Rule
> 23 requirement have been established and is persuaded to rule,
> based on the relevant facts and the applicable legal standard,
> that the requirement is met.[41]

A court's "obligation to make such determinations is not lessened by overlap

between a Rule 23 requirement and a merits issue" – even where the two are

---

[38]    *Id.*

[39]    *See* – F.3d –, No. 05-3349-cv, 2006 WL 3499937 (2d Cir. Dec. 5, 2006).

[40]    *Id.* at *15.

[41]    *Id.*

11

"identical."[42]  In making this determination, courts should refrain from considering "aspect[s] of the merits unrelated to a Rule 23 requirement."[43]

## IV.  DISCUSSION

### A.    Rule 23(a)

#### 1.    Numerosity and Commonality

Defendants do not dispute that plaintiffs' proposed class is sufficiently numerous under Rule 23(a)(1).  Although the exact identity and number of class members remains unknown, the record shows that there are thousands of potential class members.[44]  Nor do defendants dispute that the proposed class meets the commonality requirement of Rule 23(a)(2).  Questions of law common to the potential class include whether the cash balance formula complies with ERISA, whether Plan participants received adequate notice of the 2000 and 2002 CBAs, and whether benefits under the Plan accrue at a rate that discriminates on the basis of age.[45]

#### 2.    Typicality

---

[42]    *Id.*

[43]    *Id.*

[44]    *See* Pl. Mem. at 7 (noting that mailing lists obtained during discovery identify thousands of Plan participants during the relevant period).

[45]    *See id.* at 8.

12

Because all absent class members were participants of the same cash balance plan and suffered the same ERISA violations the typicality requirement is also satisfied. All named plaintiffs' claims allege ERISA violations that affect the pensions of all Plan participants during the class period. Their claims arise from "'the same course of events'" – the same unlawful accrual formula – and each participant makes the same "'legal arguments to prove the defendant[s']' liability.'"[46] Although the amount of harm suffered by individual class members depends on several factors, such as age and length of service, "differences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims."[47]

Defendants allege that plaintiffs have not proved typicality because their claims "hinge on a demonstration of 'likely prejudice,' which will be based on facts and circumstances unique to each . . . purported class member."[48]

---

[46]   *Robinson*, 267 F.3d at 155 (quoting *Marison A.*, 126 F.3d at 376 (typicality exists where plaintiffs' legal arguments are "similar").

[47]   *Ouellette v. International Paper Co.*, 86 F.R.D. 476, 480 (D. Vt. 1980) (citing *Sanders v. Faraday Labs., Inc.,* 82 F.R.D. 99, 101 (E.D.N.Y. 1979) (concluding that "[p]roof of defendant's liability . . . will benefit all members of the proposed classes," and "that the damages, if any, may reach a de minimis level at some point among the class members does not make the named plaintiffs' claims atypical")).

[48]   *See* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("Def. Mem.") at 6-7 (citing *Dunnigan v. Metropolitan Life Ins. Co.*, 214 F.R.D. 125, 137 (S.D.N.Y. 2003)).

13

Defendants presented the identical argument in their motion for summary judgment, and it is no more convincing here than it was there.[49] Even assuming that all of plaintiffs' claims require a showing of likely prejudice, plaintiffs have certainly met this requirement. I need not make "individualized assessments into each potential class member's proof and defenses, as the 'likely prejudice' showing [is] satisfied by the terms of the plan itself."[50] The defects in the Plan's accrual formula and in the section 204(h) notices were themselves "significant enough to establish a presumption of likely prejudice," common to all potential class members, and "this presumption has not been rebutted."[51]

### 3. Adequacy

---

[49] *See id.* (citing Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment at 24-25). Defendants reassert that plaintiffs have failed to proffer evidence showing that they were harmed by any inadequacies in the section 204(h) notices. However, as I held in my earlier ruling, the record indicates that Plan participants were indeed "deprived of the opportunity to take timely action in response to the purported "amendment;" adopting the Plan's unlawful application of the fractional rule. *Citigroup I*, 2006 WL 3613691, at *10 (quotation marks and citation omitted). "S[s]uch action might have included seeking injunctive relief, altering their retirement investment strategies, or perhaps considering other employment." *Id.*

[50] *Richards*, 2006 WL 2979373, at *3.

[51] *Id.* (citing *Frommert v. Conkright*, 433 F.3d 254, 267 (2d Cir. 2006)). *Accord Piazza v. EBSCO Indus.*, 273 F.3d 1341 (11th Cir. 2001); *Petrolito v. Arrow Fin. Servs., LLC*, 221 F.R.D. 303, 313 (D. Conn. 2004) (discussing the maintainability of "a (b)(1)(A) ERISA suit involving the application of an ERISA-covered plan to a number of employees").

The record demonstrates that plaintiffs' interests are commensurate with those of the proposed class.[52] Defendants argue, without specificity, that adequacy is lacking because "the named Plaintiffs have already conceded facts that preclude them from prevailing on the claims they purport to assert on behalf of the purported class members."[53] This argument appears to be completely baseless as defendants never identify the alleged concessions. In fact, plaintiffs' claims are premised on the same Plan provisions and ineffective section 204(h) notices that give rise to the claims of absent class members, and plaintiffs state claims to pension benefits to which the potential class members are also entitled. Plaintiffs have clearly satisfied the adequacy requirement.

### B.    Class Certification Under Rule 23(b)

#### 1.    Rule 23(b)(1)

---

[52]    *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) ("The adequacy inquiry under Fed. R. Civ. P. 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members."); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 142 (2d Cir. 2001) (requiring courts to "ask whether plaintiff's interests are antagonistic to the interest of other members of the class") (quotation marks and citation omitted).

[53]    Def. Mem. at 8. The cases defendants cite in support of this argument are predicated on easily distinguishable facts. *See, e.g., Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307 (S.D.N.Y. 2003) (denying certification where many members of purported class of employees had signed binding releases with varying terms, waiving their right to recover ERISA benefits, thereby subjecting them to unique defenses).

The proposed class is well-suited for certification under Rule 23(b)(1). The language of subdivision (b)(1)(A), addressing the risk of "inconsistent adjudications," speaks directly to ERISA suits, because the defendants have a statutory obligation, as well as a fiduciary responsibility, to "treat the members of the class alike."[54]  The proposed class members number in the thousands; they all suffered the same statutory violations and are therefore entitled to similar forms of relief, including reformation of the Plan to comport with ERISA.

In opposition, defendants assert that there is no reason to believe that multiple actions will be brought for these violations in the absence of class certification, or that multiple actions would produce inconsistent results.[55]  They argue that in the year that has passed since the commencement of this action, there have been no additional complaints, nor were any previous complaints filed in the five year history of the cash balance plan.[56]  However, as other courts have noted, the fact that only a limited number of plaintiffs have come forward can weigh

---

[54]     *Amchem*, 521 U.S. at 614 (quotation marks and citation omitted). *Accord Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846-47 (1999); *Richards*, 2006 WL 2979373, at *8-9; 2 *Newberg on Class Actions* § 4.8 at 26 (4th ed. 2002) ("Newberg") (offering examples of the applicability of Rule 23(b)(1)(A) to cases where defendant had a statutory obligation to treat all class members alike).

[55]     *See* Def. Mem. at 10-11.

[56]     *See id.*

significantly in favor of class certification.[57]   Additionally, "[t]he Second Circuit

itself, in several opinions . . . has noted that the absence of other lawsuits is

meaningless in determining the interest of absent class members in the

controversy."[58]

Because the claims here are premised on statutory violations caused

by the terms of the Plan, and because plaintiffs seek injunctive relief – including

the retroactive reformation of the Plan and recalculation of benefits – inconsistent

dispositions of these claims by different courts "could create an untenable

situation."[59]   Thus, class certification under 23(b)(1)(A) is appropriate.

Defendants also argue, unpersuasively, that this Court's previous

Consolidation Order weighs against class certification.[60]   However, unlike the class

action device, consolidation "does not merge the suits into a single cause, or

change the rights of the parties, or make those who are parties in one suit parties in

---

[57]   *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir. 1990) ("[T]he fact that Gary Plastic was the only plaintiff to come forward and seek to represent the class weighs in favor of certification . . . .").

[58]   2 Newberg § 4.6 at 21-22 (citing *Korn v. Franchard Corp.,* 456 F.2d 1206 (2d Cir. 1972); *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555 (2d Cir. 1968); *Green v. Wolf Corp.,* 406 F.2d 291 (2d Cir. 1968)).

[59]   *Richards,* 2006 WL 2979373, at *9.

[60]   *See* Def. Mem. at 10.

another."[61]   Although other claimants have not yet come forward, plaintiffs have

adequately alleged that many similarly-situated Plan participants suffered the same

statutory violations.  In light of my previous ruling, there is little doubt that in the

absence of class certification, others would be encouraged to commence

litigation.[62]

### 2.    Rule 23(b)(2)

Class certification here also falls squarely within the purview of Rule

23(b)(2), because I find that "even in the absence of possible monetary recovery,

---

[61]    *In re Community Bank of N. Va. & Guaranty Nat'l Bank of Tallahassee
Second Mortgage Loan Litig.*, 418 F.3d 277, 298 (3d Cir. 2005).

[62]    Plaintiffs also argue for certification under Rule 23(b)(1)(B). *See* Pl. Mem.
at 12-13; Plaintiffs' Reply Memorandum of Law in Further Support of their
Motion for Class Certification at 6-7.  But the "historical antecedents" of this
subdivision suggest that it was designed for "class actions . . . involving, for
instance, 'claimants to trust assets, a bank account, insurance proceeds, company
assets in a liquidation sale, [and] proceeds of a ship sale in a maritime accident
suit.'" *Dobson v. Hartford Life & Accident Ins. Co.*, No. 99 Civ. 2256, 2006 WL
861021, at *7 (D. Conn. Mar. 31, 2006) (quoting *Ortiz,* 527 U.S. at 834).  Given
that the classic cases suitable for Rule 23(b)(1)(B) certification are limited fund
cases, and that plaintiffs have not established a basis for going beyond this
rationale, and because I find certification proper under an alternative subdivision of
Rule 23(b), I limit certification under Rule 23(b)(1) to subdivision (A). *See Ortiz*,
527 U.S. at 834; *see also* 2 Newberg § 4.8 at 30 ("There is no real litigation
significance whether the court certifies the class under Rule 23(b)(1)(A) or
(b)(1)(B) or both.  Certification under either of these two provisions will not
trigger any special class provisions in other parts of Rule 23 relating to notice or
right of exclusion, and each subdivision will permit class suits seeking injunctive
relief or damages or both.  Court certification of a class under either Rule
23(b)(1)(A) or (b)(1)(B) makes no difference.").

reasonable [Plan participants] would bring the suit to obtain the injunctive [and] declaratory relief" plaintiffs seek.[63]  For even if they were somehow precluded from monetary recovery, reasonable Plan participants would bring suit to enjoin the Plan's application of the fractional rule and to compel a reformation of the Plan to comply with ERISA's minimum rates of benefit accrual.  Additionally, I find plaintiffs' prayers for relief – including monies prescribed by the recalculation of benefits under a statutorily compliant formula – to be both reasonably necessary and appropriate "in light of the facts and circumstances of the case."[64]  In other words, given the import and necessity of plaintiffs' prayers for declaratory and injunctive relief, they "predominate" over other prayers for relief under *Robinson*.[65]

Defendants assert that Rule 23(b)(2) certification is unavailable to plaintiffs with respect to certain statutory violations because plaintiffs seek "restitutionary relief" in the form of "the greater of the benefit calculated under the

---

[63]   *Parker*, 331 F.3d at 20 (quotation marks and citation omitted).

[64]   *Id. Accord Richards v. FleetBoston Fin. Corp.,* 235 F.R.D. 165, 174 (S.D.N.Y. 2006) (certifying, under Rule 23(b)(2), a class of plan beneficiaries seeking monetary and injunctive relief for ERISA violations); *Amara v. Cigna Corp.*, No. 3:01CV2361, 2002 WL 31993224, at *4 (D. Conn. Dec. 20, 2002) (holding that claims seeking equitable relief under ERISA section 502(a), 29 U.S.C. § 1132(a), warranted class certification under 23(b)(2) "because they seek injunctive relief, pursuant to ERISA, generally applicable to the entire class").

[65]   *See* 267 F.3d at 164.

pre-cash balance formula or the cash balance formula."[66] This argument misses

the mark because it is well established that a prayer for monetary relief in addition

to equitable relief will not defeat a Rule 23(b)(2) class action.[67] While it is true

that Plan participants are suing to recover benefits, the primary relief being sought

is declaratory. Indeed,

> [w]hat is sought is a declaration that [Citigroup's] method of
> computing [accrued benefits] is unlawful. That is a ground
> common to all the members of the class . . . . True, the
> declaration sought and obtained [is] merely a prelude to a
> request for damages . . . . [b]ut a declaratory judgment is
> *normally* a prelude to a request for other relief, whether
> injunctive or monetary; so there is nothing suspicious about the
> characterization of the suit as one for declaratory relief. The
> hope that motivates casting a request for relief in declaratory

---

[66]    Def. Mem. at 12 (arguing that (b)(2) certification is unavailable on plaintiffs' inadequate section 204(h) notice claims). Defendants' characterization of the monetary relief being sought as "restitutionary" is inaccurate. As Judge Richard Posner recently observed, where a pension plan is found unlawful under ERISA, a participant's claim "to recover benefits" is neither restitutionary nor equitable, "but it is declaratory." *Berger v. Xerox Corp. Ret. Income Guar. Plan*, 338 F.3d 755, 763-64 (7th Cir. 2003) (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213-14 (2002); *Honolulu Joint Apprenticeship & Training Comm. v. Foster*, 332 F.3d 1234, 1237-38 (9th Cir. 2003)).

[67]    *See Robinson,* 267 F.3d at 164 (holding that certification of a class pursuant to Rule 23(b)(2) is appropriate even where a claim seeks both injunctive relief and non-incidental monetary damages); *FleetBoston*, 235 F.R.D. at 174 (certifying a class of pension beneficiaries under subdivision(b)(2) in light of the "'relative importance of the remedies sought'") (quoting *Parker*, 331 F.3d at 20); *see also Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001) (concluding that in order to *not* predominate, monetary relief must be "incidental," meaning that "'damages flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief . . . .'") (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998)).

20

terms is that if the declaration is granted, the parties will be able to negotiate the concrete relief necessary to make the plaintiffs whole without further judicial proceedings. No one wants an empty declaration.[68]

Here, because the recalculation and crediting of withheld pension benefits will be "the direct, anticipated consequence" of my previous ruling, the suit can be maintained under Rule 23(b)(2).[69]

## V.    CONLCUSION

For the foregoing reasons, certification of the proposed class is granted pursuant to Rule 23(b)(1)(A) and (b)(2) of the Federal Rules of Civil Procedure. The Clerk of Court is directed to close this motion [Docket No. 39]. A conference is scheduled for January 2, 2007, at 4:30 p.m., at which the parties should be prepared to discuss the scope of the class and the possible need for subclasses.

---

[68]    *Berger,* 338 F.3d at 764.

[69]    *Id.* Moreover, it is not uncommon, for purposes of (b)(2) certification, for courts to treat injunctions requiring the payment of monies unlawfully withheld as *injunctive* – rather than monetary – relief. *See, e.g., Berger*, 338 F.3d at 763-64 (holding that pension beneficiaries' suit to recover benefits was maintainable as a class action under 23(b)(2)); *FleetBoston*, 235 F.R.D. at 174 (certifying a class under 23(b)(2) where plaintiff sought injunctive and monetary relief on grounds substantially similar to those articulated by the Citigroup plaintiffs); *Walsh v. Northrop Grumman Corp.*, 162 F.R.D. 440, 448 (E.D.N.Y. 1995) (finding that a claim was for injunctive relief, not monetary damages, for 23(b)(2) purposes, where plaintiffs requested the court to restore them to their positions prior to a merger, including back pay and restitution of benefits).

21

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         December 19, 2006

– **Appearances** –

*For Plaintiffs:*

Edgar Pauk, Esq.
144 E. 44th Street, Suite 600
New York, New York 10017
(212) 983-4000

Brad N. Friedman, Esq.
Milberg Weiss Bershad & Schulman, LLP
One Pennsylvania Plaza
New York, New York 10119
(212) 594-5300

William D. Frumkin, Esq.
Sapir & Frumkin LLP
399 Knollwood Road, Suite 310
White Plains, New York 10603
(914) 328-0366

Richard S. Schiffrin, Esq.
Joseph H. Meltzer, Esq.
Edward W. Ciolko, Esq.
Schiffrin & Barroway, LLP
280 King of Prussia Road
Radnor, Pennsylvania 19087
(610) 667-7706

*For Defendants:*

Myron Rumeld, Esq.
Proskauer Rose LLP
1585 Broadway
New York, New York 10036-8299
(212) 969-3021